William Keith HYATT, Jr. Appellant

v.

COMMONWEALTH of Kentucky,
Appellee,

and

Dennis Gilbert Hall, Appellant,

v.

Commonwealth of Kentucky, Appellee,

and

Commonwealth of Kentucky,
Appellant/Cross
Appellee,

v.

Nathaniel Sims, Appellee/Cross
Appellant.

Nos. 2000–SC–0676–DG, 2000–SC–
0820–DG, 2000–SC–1076–DG,
2000–SC–0961–DG.

Supreme Court of Kentucky.

Feb. 21, 2002.

Rehearing Denied May 16, 2002.

Carol R. Camp, Asst. Public Advocate, Frankfort, for William Keith Hyatt, Jr.

Elizabeth Shaw, Richmond, for Dennis Gilbert Hall.

Albert B. Chandler III, Atty. Gen., Anitria M. Franklin, Asst. Atty. Gen., Frankfort, for Appellee.

Albert B. Chandler III, Atty. Gen., Tami Allen Stetler, Asst. Atty. Gen., Frankfort, for Appellant/Cross-Appellee.

Frank W. Heft, Jr., J. David Niehaus, Deputy Appellate Defender, Louisville, for Appellee/Cross-Appellant Nathaniel Sims.

WINTERSHEIMER, Justice.

These cases arise out of three different Court of Appeals' opinions rendered by three different panels concerning the constitutionality of the Sexual Offender Registration Act, KRS 17.500 et seq. commonly known as "Megan's Law." The separate opinions of the Court of Appeals are diverse, however, all three opinions involve an appeal from a circuit court Sex Offender Risk Determination, classifying each of the defendants being released as a "high-risk sex offender," requiring lifetime registration unless redesignated. *Hyatt v. Commonwealth* affirmed the constitutionality of the statutes but reversed and remanded for a New Risk Assessment hearing. In *Hall v. Commonwealth*, a split panel of the Court of Appeals affirmed the order. In the third case, *Commonwealth v. Sims*, which also includes a cross-appeal, the panel unanimously reversed and vacated, declaring the entire statutory system unconstitutional as a violation of the state constitutional separation of powers provisions. This Court accepted discretionary review in order to reach a definitive disposition of the constitutional questions involved. A companion case, *Martinez v. Commonwealth*, 2000–SC–1135–TG, will be considered separately.

We have carefully reviewed all of the authorities and arguments raised by the respective parties in these appeals. We will briefly discuss the facts and procedural histories of each case. As far as possible, we have combined common issues or cross referenced them in the opinion. We address individual issues separately as needed.

**Legislative History**

In response to a general nationwide public outrage concerning the abduction and sexual abuse of children a number of states have attempted to find legislative ways to protect such children. Lawmakers have expressed a particular concern for the high rate of recidivism by perpetrators of sex crimes. New Jersey gained national recognition after it adopted a sex offender registration law which has become known as "Megan's Law," named after a child abducted, raped and murdered by a known child molester who had moved across the street from the child's family without their knowledge. The constitutionality of the New Jersey legislation was upheld by the New Jersey Supreme Court in *Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367 (1995).

In 1994, Congress adopted the Jacob Wetterling Crimes Against Children and Sexually Violent Offenders Registration Act to encourage individual states to adopt sex offender registration statutes. If a state did not adopt some version of Megan's Law with certain provisions, Congress could withhold 10 percent of the funds that the state would ordinarily receive under 42 U.S.C. § 3765, the Omnibus Crime Control and Safe Streets Act of 1968.

In response, the Kentucky General Assembly adopted the first version of Megan's Law in 1994, codified as KRS 17.500–540 which required persons to register in certain circumstances after being convicted of a sex crime. Under this Act, offend-

ers were required to register for a period of ten years following their discharge from confinement or ten years following their maximum discharge date on probation, shock probation, conditional discharge, parole or other form of early release, whichever period was greater. *See* KRS 17.520, which was repealed in part and amended in part in 1998. Failure to register would subject the person to a charge of a Class A Misdemeanor. The law applied to any person who pled guilty or was convicted of a sex crime after July 15, 1994.

In 1998, the legislature amended the sex offender registration laws and imposed additional requirements of classification of offenders based on their potential of recidivism and public notification depending on the classification. The principal change from 1994 to 1998 was the creation of a classification as to the potential for recidivism. The law also provided for a risk assessment. The 1998 Act, KRS 17.500–540 and KRS 17.550–991 applied to persons individually sentenced or incarcerated after July 15, 1998. KRS 17.520, 17.552, 17.570–578 and 17.991 did not become effective until January 15, 1999.

In 2000, the General Assembly again amended the statute so as to provide for the elimination of any need for a hearing in the risk assessment procedure and extended the registration requirements to include an Internet Web site which posted the relevant information of the convicted sex offender including a photograph and address.

## I. Hyatt v. Commonwealth, 2000–SC–0676–DG

In this case, Hyatt sexually abused his younger sister over a period of time. In 1991, he pled guilty to one count of first-degree sexual abuse and the circuit court sentenced him to one year in prison. The sentence was suspended and Hyatt was probated for a period of three years. After the trial judge revoked his probation, Hyatt pled guilty to additional charges of second-degree rape and second-degree sodomy. In 1993, the circuit court sentenced him to five years in prison on each count to be served consecutively.

On January 11, 1999, the circuit court ordered Hyatt, an inmate, to undergo a sex offender risk assessment pursuant to KRS 17.570. That statute provides:

> Upon conviction of a "sex crime" as defined in KRS 17.500 and within sixty calendar days prior to the discharge, release, or parole of a sex offender, the sentencing court shall order a sex offender risk assessment by a certified provider for the following purposes: (a) To determine whether the offender should be classified as a high, moderate or low risk sex offender; (b) To designate the length of time a sex offender shall register pursuant to KRS 17.500 to KRS 17.540 and (c) To designate the type of community notification that shall be provided upon the release of the sex offender pursuant to KRS 17.500 to 17.540.

Hyatt was represented by counsel at a hearing and on the morning of the hearing the risk assessment arrived by facsimile and the circuit court admitted the report. Hyatt did not present any evidence to counter the conclusions of the report and the court relied on the report exclusively to classify Hyatt as a high-risk sex offender. Hyatt appealed this classification to the Court of Appeals which affirmed in part, reversed in part and remanded. The Court of Appeals noted the differences between the 1994 and 1998 Acts in that the 1994 Act required a sex offender to register within two weeks of his release from prison and to remain registered for ten years. In 1998, the General Assembly

amended the statute to require sex offenders to be classified as low, moderate or high risk offenders which in turn would determine the length of time the defendant was required to register and who would be notified of such registration.

The Court of Appeals panel rejected the constitutional objections of Hyatt to the statutory system and found that neither double jeopardy, ex post facto, nor due process rendered the statute unconstitutional. The Court of Appeals did reverse and remand on procedural due process grounds, holding that Hyatt was entitled to call expert witnesses and to receive timely notice of the Risk Assessment Report.

Hyatt argues that the Court of Appeals erred in holding that the 1998 and 2000 versions of KRS 17.500 et seq. on their faces, and as applied to him, did not violate the ex post facto clauses of the state and federal constitutions. He contends that the retroactive application of the 1998 and 2000 statutes violates his state and federal protection against ex post facto legislation and that the Kentucky Registration and Notification Statutes were not intended to apply to persons who were convicted before July 15, 1994. He was assessed under the 1998 Act.

Hyatt also maintains that the Court of Appeals erred in determining that he had no protected liberty interest and also failed to provide the circuit court with sufficient guidance on the procedures that it should follow upon remand, thus violating his federal and state constitutional due process rights.

The Commonwealth responds that the Sex Offender Registration Statute does not violate the constitutional protection against ex post facto laws and does not violate liberty interests in privacy or reputation. It claims that the Court of Appeals provided the trial court with sufficient

guidance upon rehearing for a new risk assessment.

### A. Ex post facto

■ There is no question that the registration statute has a retroactive effect in this case. At the time Hyatt committed the sex crimes against his younger sister, he was not required to register as a sex offender. However, Hyatt is not able to satisfy the second prong of the ex post facto test set out in *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), or *Lattimore v. Corrections Cabinet,* Ky.App., 790 S.W.2d 238 (1990). *Graham, supra,* sets out a two-pronged test to establish whether a criminal or penal law was ex post facto to the effect that "it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *See also Lynce v. Mathis,* 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997). In *Lattimore, supra,* we have followed the same analysis. We agree with the rationale of the Court of Appeals in *Lattimore* to the effect that ex post facto laws must relate to a very real and direct effect on the actual time the prisoner remains behind bars which could include an increase in punishment. That is not the case here.

Registration and Notification Statutes across the nation have consistently been held to be remedial measures, not punitive, and therefore do not amount to punishment or increased punishment. The United States Supreme Court in *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), rejected constitutional challenges to Kansas' Sexually Violent Predator Act which authorized civil commitment procedures for an individual who previously had been convicted of a sex crime and was subsequently found to be a sexually violent predator in a civil proceed-

ing. The U.S. Supreme Court rejected claims that the statute imposed punishment in violation of the ex post facto clause. Most state and federal courts have determined that sex offender classification and registration, including community notification, does not violate the ex post facto provisions of either the state or federal constitution. *See e.g. E.B. v. Verniero,* 119 F.3d 1077 (3rd Cir.1997); *Arizona Dept. of Public Safety v. Superior Court,* 190 Ariz. 490, 949 P.2d 983 (App.1997) *review denied,* 192 Ariz. 276, 964 P.2d 477 (1998); *Kellar v. Fayetteville Police Dep't,* 339 Ark. 274, 5 S.W.3d 402 (1999); *People v. Castellanos,* 21 Cal.4th 785, 88 Cal.Rptr.2d 346, 982 P.2d 211 (1999); *Ray v. State,* 133 Idaho 96, 982 P.2d 931 (1999); *Spencer v. O'Connor,* 707 N.E.2d 1039 (Ind.Ct.App. 1999); *In re Detention of Garren,* 620 N.W.2d 275 (Iowa 2000); *State v. Wilkinson,* 269 Kan. 603, 9 P.3d 1 (2000); *State v. Torres,* 254 Neb. 91, 574 N.W.2d 153 (1998); *Meinders v. Weber,* 604 N.W.2d 248 (S.D.2000)

The Sixth Circuit Court of Appeals reviewed the Sex Offender Registration and Notification Statutes of Tennessee and determined that the system did not impose punishment and thus did not violate the ex post facto clause of the federal constitution. *See Cutshall v. Sundquist,* 193 F.3d 466 (6th Cir.1999), *cert. denied,* 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 460 (2000). *See also Doe, supra.* As stated in *Doe,* what counts is the purpose and design of the statutory provision, its remedial goal and purposes and not the resulting consequential impact that may inevitably but incidentally flow from it. *See also Russell v. Gregoire,* 124 F.3d 1079 (9th Cir.1997); *State v. Cook,* 83 Ohio St.3d 404, 700 N.E.2d 570 (1998); *Commonwealth v. Mountain,* 711 A.2d 473 (Pa.Super.1998), although apparently at variance with *Commonwealth v. Williams,* 557 Pa. 285, 733 A.2d 593 (1999).

We are persuaded that the designation of sexual predator is not a sentence or a punishment but simply a status resulting from a conviction of a sex crime. *Cf. Fletcher v. State,* 699 So.2d 346 (Fla.Dist. Ct.App.1997). Another Florida case, *Collie v. State,* 710 So.2d 1000 (Fla.Dist.Ct. App.1998), *cert. denied,* 525 U.S. 1058, 119 S.Ct. 624, 142 L.Ed.2d 563 (1998), correctly noted that registration requirements did not constitute a disability or restraint; the registration did not place limitations on the activities of the offender, and the registration requirement was insignificant in comparison to the goal of protecting the public.

Texas and Illinois have also held that because the sexual offender registration requirement is remedial in nature, it does not impose punishment for constitutional purposes and is not open to an ex post facto challenge. *See People v. Malchow,* 193 Ill.2d 413, 250 Ill.Dec. 670, 739 N.E.2d 433 (2000); *Saldana v. State,* 33 S.W.3d 70 (Tex.App.2000).

The Kentucky 1998 and 2000 Sex Offender Registration Statutes are directly related to the nonpunitive goals of protecting the safety of the public. The statutes in question do not amount to a separate punishment based on past crimes.

■ The Registration and Notification Statutes are reasonably related to the nonpunitive goals of protecting the public and facilitating law enforcement. *Doe v. Pataki,* 120 F.3d 1263 (2nd Cir.1997). Registration is a reasonable and proper means for achieving its purpose and completely consistent with the exercise of the police power of the Commonwealth to protect the safety and general welfare of the public. *Snyder v. State,* 912 P.2d 1127 (Wyo.1996). Any potential punishment arising from the violation of the Sex Offender's Registration Act is totally prospective and is not punishment for past criminal behavior.

*See Kitze v. Commonwealth,* 23 Va.App. 213, 475 S.E.2d 830 (1996). Although registration might impose a burden on a convicted sex offender, registration is merely a remedial aspect of the sentence. *See Kitze, supra.* The registration and notification required by the statutes are nonpunitive and provide only the slightest inconvenience to the defendant, although they provide the overwhelming public policy objective of protecting the public.

We are not persuaded by the citation to several Louisiana state cases that held the retroactive application of sex offender registration statutes violates the ex post facto clause of the Louisiana and federal constitutions. Recently, the Louisiana Supreme Court in *State ex rel. Olivieri v. State,* 779 So.2d 735 (La.2001), held that retroactive application of the sex offender registration system does not violate the state or federal ex post facto laws. Moreover, the Louisiana Supreme Court held that the sex offender registration system which was applicable to all sex offenders without ascertaining the likelihood of recidivism, was not so obtrusive so as to be punitive rather than remedial or regulatory. We believe that the Louisiana Supreme Court has rendered the final word on that state's position.

It is the decision of this Court that the opinion of the Court of Appeals holding that the sex offender classification, registration and notification system is constitutional must be affirmed. The statutes do not amount to an ex post facto violation. The registration laws do not punish sex offenders. They have a regulatory purpose only. The dissemination of information has never been considered a form of punishment. The Act in question does not impose any additional punishment on Hyatt, and are not ex post facto laws under either the United States Constitution or the Kentucky Constitution.

 We further agree with the Court of Appeals that this case should be remanded to the circuit court because of the untimely arrival of the Risk Assessment Report. In addition, we believe the case should be remanded for the failure of Dr. Wagner to attend the hearing. The procedural due process rights of Hyatt were violated at the risk assessment hearing because the report arrived too late to provide him with notice of its contents, to allow his counsel to read and consider it and to allow sufficient time for preparation including the calling of expert witnesses, if any, to counter the conclusions of the report. We remand this case for an evidentiary hearing, in accordance with the pre–2000 amendments, which would include the rights to present an expert witness.

 We agree with the Court of Appeals that the failure of the victim to testify is of no consequence because this hearing involves a risk assessment, not a criminal trial. Hyatt waived his constitutional rights to confrontation by pleading guilty. *Centers v. Commonwealth,* Ky. App. 799 S.W.2d 51 (1990).

### B. Privacy

 Hyatt argues that he has a nontrivial privacy interest under both the federal and state constitutions to prevent the Commonwealth from disclosing his personal information including his home address to the public. The sex offender registration statutory system does not violate any liberty interests in privacy or reputation that can be inferred from Section Fourteen of the Kentucky Constitution. Although rights of privacy have been argued in many ways, it would appear there is no specific language about the "right to privacy" as such in either the federal or state constitution. As noted in *Doe v. Poritz,* we must decide whether the intrusion on the right of privacy in regard to address

and photographs is justified by balancing the governmental interest in disclosure against the private interest in confidentiality. In that case, after considering all the factors, the Supreme Court of New Jersey found that the state interest in public disclosure substantially outweighed any interest in privacy. "There is an express public policy militating toward disclosure: the danger of recidivism posed by sex offenders. The state interest in protecting the safety of members of the public from sex offenders is clear and compelling." *Doe.* We must agree.

The Commonwealth of Kentucky has a serious and vital interest in protecting its citizens from harm which outweighs any inconvenience that may be suffered because of the notification and registration provisions. The statute clearly serves a public policy and is a wise use of government resources all of which is to be decided by the legislature. *Cf. Sisters of Charity Health Systems, Inc. v. Raikes,* Ky., 984 S.W.2d 464 (1998); *Commonwealth v. Allen,* 980 S.W.2d 278 (1998).

The argument by Hyatt that registration and notification violate his right of privacy has been rejected by most of the states that have enacted such legislation, as well as the federal courts. *See e.g. Paul P. v. Verniero,* 170 F.3d 396 (3d Cir.1999); *Russell v. Gregoire, supra; Lanni v. Engler,* 994 F.Supp. 849 (E.D.Mich.1998); *Doe; Commonwealth v. Mountain,* 711 A.2d 473 (Pa.Super.1998). Matters which have been exposed to public view may be disclosed without implementing privacy interests. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *In re Meyer,* 142 Wash.2d 608, 16 P.3d 563 (2001).

The Illinois Supreme Court in *People v. Malchow,* 193 Ill.2d 413, 250 Ill.Dec. 670, 739 N.E.2d 433 (2000), rejected the argument that registration, which included home address, fingerprints and a photograph, infringed on the right to privacy under the United States Constitution. Indiana has also rebuffed a similar challenge concerning public dissemination of information regarding crime in order to allow the public to protect themselves. *See Spencer v. O'Connor,* 707 N.E.2d 1039 at 1043 (Ind.Ct.App.1999). As noted in *Spencer, supra,* a significant part of the information contained in the registration is already in the public domain and is accessible by the public. The compilation of the information in one place does not add a punitive consequence to an otherwise regulatory measure. The information is not truly personal data that is subject to privacy because a convicted sex offender never had a reasonable expectation of privacy in regard to the information that is now consolidated and posted on the sex offender registry.

Public notification by means of the Internet has been determined not to violate the right of privacy in other jurisdictions. *See Femedeer v. Haun,* 227 F.3d 1244 (10th Cir.2000); *State v. Stevens,* 26 Kan. App.2d 606, 992 P.2d 1244 (1999). The Court of Appeals correctly found that neither the federal nor the state constitution prohibited the disclosure of such information when the public health or safety is involved.

### C. Guidance on Risk Assessment

Hyatt contends that the Court of Appeals failed to provide the circuit court with adequate guidance to hold a constitutionally sufficient risk assessment hearing upon remand. We disagree.

The argument by Hyatt that the Court of Appeals did not address the argument that the definition of sex offender contained in the 1998 version of KRS 17.550(2) presumed that he was a sex offender even before he appeared for the risk assessment

hearing is without merit because he never raised such a claim of error before the Court of Appeals. Consequently, that court had no responsibility to address the claim of error.

However, by pleading guilty to second-degree rape and second-degree sodomy and upon notification of his impending release from prison, he was properly assessed for the sex offender registration program although he now argues he does not fit the definition. KRS 17.510(2) reads as follows:

> Any person eighteen (18) years of age or older at the time of the offense or any youthful offender who has committed or attempted to commit a sex crime shall, within ten (10) days after his release by the court, the parole board, or the cabinet, register with the appropriate local probation and parole office in the county in which he resides.

This definition is used only for the purpose of actual risk assessment determinations. KRS 17.510(2) relates to which persons are required to register.

Hyatt also claims that the Court of Appeals failed to specify the exact nature of the burden of proof. However, once again, he failed to raise the issue in the Court of Appeals and thus the court had no opportunity or duty to address the question. KRS 17.500 et seq. sets out the guidelines for the trial court to follow upon rendering a risk assessment determination. The trial judge is required to review all evidence presented by both sides. The trial judge did follow such a requirement and there is no error.

■ The issue regarding the reliability of the evidence submitted during the risk assessment test was not properly presented to the Court of Appeals. It is our view on the merits of the question that the trial judge correctly exercised his authority in accepting the results of the risk assessment evaluation without qualifying the tests pursuant to *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) or *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The trial judge is not required to hold an actual hearing in order to comply with *Daubert; Kumho, supra*, at 152, 119 S.Ct. at 1176, 143 L.Ed.2d at 252; *Nelson v. Tenn. Gas Pipeline*, 243 F.3d 244, 249 (6th Cir.2001).

The Court of Appeals correctly held that Hyatt did not have the right to confront his victim because such a right has generally been held to only apply to trials as distinguished from a risk assessment hearing. We recognize the fact that Hyatt on direct appeal to the Court of Appeals did not raise the issues of whether he was entitled to prehearing discovery or that the Commonwealth must devise a notification plan that accounts for the actual level of risk that is posed to the community.

■ Finally, Hyatt can cite no authority that supports his argument that the Commonwealth must prove by clear and convincing evidence that the high risk classification, as well as its proposed notification plan are justified. The statute sets out specific guidelines for the trial judge to follow in making a determination of the risk. The statute does not place a "clear and convincing evidence" standard of proof element on the Commonwealth.

It is the decision of this Court that the opinion of the Court of Appeals is affirmed in all respects which means that a remand is necessary because the procedural due process rights of Hyatt were violated. The Act is constitutional as applied.

## II. Hall v. Commonwealth, 2000–SC–0820–DG

This appeal was heard at oral argument with the three other sex offender registration cases. It involves an appeal from an opinion of the Court of Appeals which affirmed an order of the circuit court which found Hall to be a high risk sex offender and required registration and notification.

The questions presented are whether the circuit court had jurisdiction to conduct the hearing; whether the statutes violate the separation of powers doctrine; and whether it was error to allow the introduction of the testimony of an expert witness without determining that the evidence was reliable. The primary issue is whether the 1998 Sexual Offender Registration Statute as enacted and applied violates separation of powers principles.

Hall, then 22 years old, was convicted of first-degree sexual abuse and first-degree sodomy in 1992. He was sentenced to a total of seven years in prison. He was paroled in 1996, and as a condition of his parole, he was directed to attend a sex offender treatment program. A year later, his parole was revoked when he failed to continue the treatment program. Also in that year, he was charged with violating the Child Pornography Prevention Act by having in his possession visual depictions obtained from the Internet of minors appearing to engage in sexually explicit conduct prohibited by 18 U.S.C. 2252(A).

Prior to his release from his state conviction, the circuit judge ordered Hall to undergo a sex offender risk assessment pursuant to KRS 17.570. He was taken to the Kentucky State Reformatory where the assessment was performed by a "certified provider," a psychologist, who after interviewing Hall and conducting a series of tests, wrote a report that Hall exhibited a "high risk to reoffend sexually." Subse-quently, a hearing was conducted in circuit court pursuant to KRS 17.570(4) where Hall, represented by counsel, sought to have the trial judge dismiss the proceeding as a violation of his constitutional protection against double jeopardy. He also challenged the sex offender Risk Assessment Report as being inadmissible as evidence because the author of the report was not present for either direct or cross-examination. The circuit judge denied the motion to dismiss because he did not believe the rules of evidence prohibiting the admission of hearsay were applicable to the proceeding which was similar to a preliminary hearing or parole revocation hearing.

Hall argues that the circuit judge erred in holding the hearing because he did not have jurisdiction and that KRS 17.500 et seq. violates the doctrine of separation of powers. He also claims that the circuit judge erred when he allowed the introduction of hearsay testimony of an expert witness without determining that the evidence was reliable. He further argues that the Court of Appeals committed error when it held that KRS 17.500 et seq. allowed the legislature to make determinations concerning evidence which are reserved for the judiciary.

The Commonwealth responds that the sentencing court had proper jurisdiction to conduct the risk assessment hearing. It argues that the legislature had the express power to determine the original jurisdiction of circuit and district courts. It also asserts that the trial judge correctly used the recommendations of the certified provider during the risk assessment hearing. The Commonwealth states that classification hearings are similar to probation and parole hearings and may be conducted in accordance with minimum requirements of due process.

### A. Jurisdiction—Separation of Powers

Although this issue is not properly preserved for appellate review, this Court will consider the arguments presented.

 We acknowledge that the legislature, pursuant to the constitution, has express power to determine the original jurisdiction of circuit and district courts. Ky. Const. §§ 112(5) and 113(6). *See also* KRS 23A.010. When the legislature does not specifically assign jurisdiction of a particular matter to the district court, jurisdiction rests in the circuit court.

The General Assembly has enacted the declaratory judgment statute, KRS 418.040 et seq., which has been held constitutional by this Court in *Black v. Elkhorn Coal Corp.*, 233 Ky. 588, 26 S.W.2d 481 (1930). It has also enacted the habeas corpus statutes encompassed in KRS 419.020 et seq. and the shock probation statutes in KRS 439.265 to 267. The latter statutes have been held to be constitutional in *Commonwealth v. Williamson*, Ky., 492 S.W.2d 874 (1973). *See also Commonwealth v. Gross*, Ky., 936 S.W.2d 85, 87 (1996).

This Court has recognized the authority of the legislature to enact statutes regarding the jurisdiction of the court. *See Kuprion v. Fitzgerald*, Ky., 888 S.W.2d 679 (1994); *McElroy v. Taylor*, Ky., 977 S.W.2d 929 (1998). Here, the legislature assigned to the circuit courts the duty of conducting classification hearings in connection with a legislative act requiring assessment for the purpose of community notice.

### B. Provider's Report

 The procedural due process rights of Hall were violated at the risk assessment hearing because the author of the report failed to attend. Consequently, this case is remanded to the circuit court to conduct an evidentiary hearing in accordance with the pre–2000 amendments. Such a hearing would require the attendance of the author of the report as well as the right of Hall to call expert witnesses to rebut the same. The trial judge has the authority to accept the results of the risk assessment evaluation without qualifying the tests pursuant to *Daubert* or *Kumho*.

The decision of the Court of Appeals is affirmed in part, reversed in part and remanded for a new evidentiary hearing. The Act is constitutional as applied to Hall.

### III. Commonwealth v. Sims, 2000–SC–1076 & 961–DG

This appeal and cross-appeal are from an opinion of the Court of Appeals reversing a ruling of the Jefferson Circuit Court which determined that Sims was a high risk sex offender pursuant to the Sex Offender Registration Act, KRS 17.500 et seq. (1998 Kentucky Acts).

In 1978, Sims pled guilty to one count of first-degree sodomy and was sentenced to 20 years in prison. Prior to his release, a risk determination hearing was held and the circuit judge determined that Sims was a high risk offender. The Court of Appeals reversed the ruling because it believed the statute violated the separation of powers doctrine and was an unconstitutional reopening of a final judgment. This Court granted discretionary review.

The Commonwealth argues that the statutory system does not constitute a reopening of the original judgment and conviction. It contends that the legislature has the express constitutional authority to regulate the jurisdiction and venue of circuit courts. The Commonwealth claims that the legislature has done this in the past in declaratory judgment statutes, habeas corpus statutes and shock probation statutes. It claims that the system actually establishes jurisdiction for a separate

civil proceeding. The Commonwealth also maintains that the courts have constitutional authority to review sex offender classifications and conduct hearings and to do so does not constitute an impermissible separation of powers violation.

Sims responds that the Court of Appeals properly declared the 1998 statute invalid because the legislature improperly ordered circuit judges to reopen closed criminal cases in order to conduct assessment hearings. He argues that the legislature did not intend that the 1998 version of KRS 17.500 et seq. apply to him. He complains that the application of the 1998 amendments of the Registration and Notification Statutes violate his constitutional protection against retroactive punishment. He asserts that the new punishment of Internet publicity under the 2000 amendments to the Sex Offender Registration Act cannot be imposed on him and that this Court must order a removal of all information about him from the state police Web site.

### A. Separation of Powers/Statute Not a Reopening

We have previously stated in this opinion that there is no violation of the separation of powers principles. We believe some additional comments are necessary to respond to the particular arguments raised by Sims.

■ The Registration and Notification Statutes are occasioned by the criminal conviction and cannot occur without it, but it does not affect the criminal proceeding. It could be compared to a PFO proceeding during a criminal trial which cannot occur without the presence of a previous criminal conviction. A risk assessment cannot arise without a prior sex offense conviction. Similar to the PFO proceeding, the offender does not receive any additional punishment for the original criminal conviction.

The previous conviction is certainly not reopened for further proceedings.

*Commonwealth v. Griffin,* Ky., 942 S.W.2d 289 (1997), provides that a court may retain jurisdiction over a particular case by operation of rule or statute and also by operation of its own judgment provided it is not precluded by any statute from doing so. Here, jurisdiction over the convicted sex offender regarding classification and registration was imposed by the statutes. The circuit court did not exceed its jurisdiction in classifying Sims. *See Collie v. State,* 710 So.2d 1000 (Fla.Dist.Ct. App.1998).

The argument that because this action carries the same number from the indictment of 22 years ago, it must signify that the case has been reopened is totally without merit. The administrative decision by the clerical division of the court system to place the number from the original conviction on the subsequent paper work does not amount to a reopening of the original judgment of conviction. The number a court system uses to track its cases has nothing to do with the substance of the case or the underlying statute. We find the Court of Appeals to be in error when it determined that the statutes required a reopening of the criminal judgment.

### B. Separation of Powers— Review Authority

■ Sims claims that the assignment of the duty to conduct a risk assessment hearing to the circuit court is a violation of the separation of powers doctrine because it places a burden on the circuit court. We cannot agree.

A hearing to review the classification of risk as recommended by the certified provider pursuant to the statute is not a delegation of a purely legislative or executive responsibility to the court system. It does not unreasonably interfere with the func-

tion of the judiciary and is not a violation of the separation of powers principles.

*Commonwealth v. Raines,* Ky., 847 S.W.2d 724 (1993), overruled on other grounds in *Commonwealth v. Howard,* Ky., 969 S.W.2d 700 (1998), recognizes that a statute may confer on the courts the duty to administer certain types of laws but not to legislate. *Raines, supra,* a case involving the revocation of drivers licenses found that nothing in the constitution prevented the administration of traffic laws including the suspension of licenses from being lawfully delegated to the courts and that such a statute did not impose a purely executive function on the judiciary. The same is true in this situation, thus the statute here does not constitute a separation of powers violation. *Cf. Mullins v. Commonwealth,* Ky., 956 S.W.2d 210 (1997).

The argument by Sims that the hearing should be conducted by the parole board is unconvincing. It is within the power of the legislature to determine what unit of government is best suited to perform certain civil responsibilities. Here, the legislature determined that the sentencing courts were most familiar with the facts surrounding the offender, and therefore, would be most capable of handling the risk determination efficiently. The assignment of this responsibility to the circuit courts is a legitimate policy decision by the legislature and does not violate the separation of powers doctrine.

The circuit courts have the constitutional authority to review sex offender classifications and to conduct hearings in connection therewith. Such action does not constitute an impermissible separation of powers violation.

The Arizona Court of Appeals, where the separation of powers doctrine approach is similar to that of Kentucky, has found that its sexually violent persons act did not violate separation of powers by providing that rules of civil procedure and evidence would apply in the proceedings. The Arizona Court concluded that: "The critical question is whether the exercise of power usurps the power of another branch of government." Such usurpation was not found in Arizona and there is no usurpation here. *See Martin v. Reinstein,* 195 Ariz. 293, 987 P.2d 779 (App.1999).

In the cross-appeal by Sims, in addition to the challenge to the constitutionality of the statutes, he raises other lengthy arguments in regard to constitutional Sections 1, 26, 27, 28, 47 and 51. None of these arguments are convincing, but we will comment on some of them.

■ We have previously held in this Opinion that the statutes in question were not intended and are not any form of punishment. Section 51 is not violated. The legislation does not relate to more than one subject and is not misleading. Registration and notification are not punishments for a previous sex crime. They are remedial measures, not punitive, and do not constitute punishment. *See Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).

■ The arguments by Sims regarding his right to privacy have no foundation. The limitation on the right to privacy was expressed by a delegate to the 1890 constitutional convention when he stated, "My rights end where another gentleman's rights commence." Const. Debates p. 597. The laws enacted here are for the direct protection of society. *See Commonwealth v. Campbell,* 133 Ky. 50, 117 S.W. 383 (1909). The contention that the statutes violate section 47 of the constitution is unpersuasive. Chapter 401 of the 2000 version of the acts does not violate the constitution because it is not a taxation or revenue bill. The purpose of the legisla-

tion is to promote public safety. The fact that the latest version of the statute was necessary to prevent Kentucky from losing federal funding does not change the statute into one of a revenue raising type. *Yeoman v. Health Policy Board,* Ky., 983 S.W.2d 459 (1998), indicates that if there is a revenue aspect to a bill that is incidental to its primary purpose, the statute survives scrutiny under Section 47. The funds received by Kentucky from the federal government are not revenue raised by means of local or state taxation.

The application of the statutes in question will not result in ex post facto, double jeopardy or bill of attainder violations. The Kentucky legislation establishes a remedial and regulatory system regarding registration and notification of convicted sex offenders similar to all the other states in the union and the federal government. From any aspect, the intended purpose of this legislation is to promote public safety. The title of the bill is "An Act concerning criminal justice matters" and in practice, the statutes relate to criminal justice matters because they apply to individuals previously convicted of sexual offenses. It should be noted that the law is not styled "An Act Relating to Crimes and Punishments."

### C. Double Jeopardy

■ We reject the claims that the statutes are unconstitutional because they violate the principles of double jeopardy. A careful review of the statutes indicates that the registration laws do not expose any individual to double jeopardy when applied to a criminal who has already been convicted of committing a sex crime. The statutes have a remedial purpose and are not excessive when compared to that purpose. The statutes protect the public and aid law enforcement in monitoring sex offenders. The fact that the statutes are intended to deter recidivism does not warrant declaring them unconstitutional as a violation of double jeopardy principles. The dissemination of information by whatever means has not been considered a form of punishment. *Cf. Cutshall v. Sundquist,* 193 F.3d 466 (6th Cir.1999). The restrictions imposed on sex offenders are not comparable in any way to any form of incarceration. The statutes serve a regulatory purpose.

None of the elements of the registration act run afoul of the double jeopardy analysis provided by this Court in *Hourigan v. Commonwealth,* Ky., 962 S.W.2d 860 (1998), or the United States Supreme Court in *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997).

They do not involve a second prosecution for the same offense after acquittal. They are not a second prosecution for the same offense after conviction, and multiple punishments for the same offense are not involved.

■ It has been held that Megan's Law, which is a common name for the Registration and Notification Act, does not adjudicate guilt nor does it inflict punishment and therefore cannot constitute a bill of attainder. *Roe v. Farwell,* 999 F.Supp. 174 (D.Mass.1998); *Patterson v. State,* 985 P.2d 1007 (Alaska Ct.App.1999); *Commonwealth v. Mountain, supra,* discussing *Commonwealth v. Gaffney,* 702 A.2d 565 (Pa.Super.Ct.1997); *Doe.* We agree.

The opinion of the Court of Appeals is reversed and the ruling of the Jefferson Circuit Court is reinstated.

The 1998 and 2000 versions of the Sex Offender Registration and Notification Statutes are constitutional as applied to each appellant herein.

All concur.