**Roger Dale BRAY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2005–CA–001037–MR.

Court of Appeals of Kentucky.

June 16, 2006.

Discretionary Review Denied by Supreme Court Oct. 12, 2006.

J. David Niehaus, Louisville, KY, for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Tami Allen Stetler, Assistant Attorney General, Frankfort, KY, for Appellee.

Before MINTON and VANMETER, JUDGES; ROSENBLUM, Senior Judge.[1]

*OPINION*

VANMETER, Judge.

Roger Dale Bray appeals from the Jefferson Circuit Court's order classifying him as a high-risk sex offender. For the following reasons, we affirm.

According to the trial court's order, Bray was sentenced on June 21, 1991, to ten years' imprisonment after a jury found him guilty of first-degree attempted rape, enhanced to twenty years' imprisonment because he was also found guilty of being a first-degree persistent felony offender. In anticipation of Bray's release from prison, the trial court conducted a sex offender risk assessment pursuant to former KRS 17.570.[2] On June 8, 1999, the trial court entered an order designating Bray as a high-risk sex offender. On appeal, this court affirmed with regard to Bray's "challenges to the Sexual Offender Registration Act (Megan's Law), KRS 17.500–.578" but vacated and remanded the case for a new hearing, consistent with *Hyatt v. Commonwealth*.[3] Accordingly, a second risk assessment was held on December 5, 2003, in which Bray's assessor participated. The trial court entered an order on March

17, 2005, again designating Bray as a high-risk sex offender. This appeal followed.[4]

Bray's first argument is that the trial court erred by allowing the Commonwealth's Attorney to appear on behalf of the Commonwealth at his assessment hearing. We disagree.

Former KRS 17.570 provided as follows:

(1) Upon conviction of a "sex crime" as defined in KRS 17.500 and within sixty (60) calendar days prior to the discharge, release, or parole of a sex offender, the sentencing court shall order a sex offender risk assessment by a certified provider for the following purposes:

(a) To determine whether the offender should be classified as a high, moderate, or low risk sex offender;

(b) To designate the length of time a sex offender shall register pursuant to KRS 17.500 to 17.540; and

(c) To designate the type of community notification that shall be provided upon the release of the sex offender pursuant to KRS 17.500 to 17.540.

(2) The sex offender shall pay for any assessment required pursuant to KRS 17.550 to 17.991 up to the offender's ability to pay but not more than the actual cost of the assessment.

(3) In making the determination of risk, the sentencing court shall review the recommendations of the certified

---

1. Senior Judge Paul W. Rosenblum sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. KRS 17.570 was enacted in 1998, effective January 15, 1999, and repealed effective April 11, 2000.

3. *Bray v. Commonwealth*, No.1999–CA–001568–MR (Ky.App. Aug. 23, 2002). *Hyatt*

*v. Commonwealth*, 72 S.W.3d 566, 577 (Ky. 2002) requires *inter alia* "the attendance of the author of the [sex offender risk assessment] report[.]"

4. Despite the Commonwealth's contention, neither the doctrine of res judicata nor the law of the case doctrine prevents us from reaching the merits of Bray's arguments.

provider along with any statement by a victim or victims and any materials submitted by the sex offender.

(4) The court shall conduct a hearing in accordance with the Rules of Criminal Procedure and shall allow the sex offender to appear and be heard.

(5) The court shall inform the sex offender of the right to have counsel appointed in accordance with KRS 31.070 and 31.110.

(6) The sentencing court shall issue findings of fact and conclusions of law and enter an order designating the level of risk.

(7) The order designating risk shall be subject to appeal.

(8) Upon release, either by probation, conditional discharge, parole, or serve-out, the sentencing court or the official in charge of the place of commitment shall forward the risk determination that the sentencing court has issued for that sex offender to the sheriff of the county to which the offender is to be released.

■ Although this statute does not expressly authorize a representative of the Commonwealth to appear at the assessment hearing, the Commonwealth clearly has "a serious and vital interest in protecting its citizens from harm" by classifying and registering sex offenders, "which outweighs any inconvenience that may be suffered because of the notification and registration provisions."[5] Moreover, even if we assume, as Bray contends, that sex offender risk assessment hearings are civil in nature, KRS 69.010(1) provides in part that

the Commonwealth's attorney shall, except in Franklin County, attend to all civil cases and proceedings in which the Commonwealth is interested in the Circuit Courts of his judicial circuit.

Further, there is no merit to Bray's assertion that KRS 69.010(2) prohibits a Commonwealth's Attorney from participating in such a hearing, as it merely provides:

In each judicial circuit containing a city of the first or second class or an urban-county government, the Commonwealth's attorney *shall not be required* to represent the Commonwealth in any civil proceedings.

(Emphasis added.) Thus, although the Commonwealth's Attorney may not be required to represent the Commonwealth in such proceedings, he or she may choose to do so. Finally, KRS 69.210, which defines the duties of the county attorney, including attendance at certain civil proceedings, is irrelevant to the determination of the duties of the Commonwealth's Attorney in regard to sex offender risk assessment hearings. It follows, therefore, that the trial court did not err by allowing the Commonwealth's Attorney to participate in Bray's sex offender risk assessment hearing.

Next, Bray argues that because he was assessed pursuant to the sex offender registration scheme enacted in 1998 and described in KRS 17.570, the trial court erred by requiring his registration information to be published on the Internet pursuant to KRS 17.580, as enacted in 2000.[6] We disagree.

As the Kentucky Supreme Court has explained, when the Kentucky Registration

---

**5.** *Hyatt v. Commonwealth*, 72 S.W.3d 566, 574 (Ky.2002).

**6.** The Commonwealth argues that this argument is not properly before this court since Bray never allowed the trial court to rule on the issue before filing his notice of appeal. Clearly, however, by ordering Bray to register, the trial court ruled on the issue. We, therefore, proceed to address it as well.

and Notification Statutes for Sex Offenders were first enacted in 1994,

> only those persons convicted of a qualifying offense after July 15, 1994 were required to register and the registration information was not released to the public. 1994 Ky. Acts, Ch. 392. In 1998, the law was changed so as to provide that one determined to be a sex offender was required to register after a hearing by the sentencing court to determine the offender's risk level. Low and moderate risk offenders were required to register for ten years. High risk offenders were required to register for life. The 1998 statute also provided for disclosure of the registration information to certain members of the public. 1998 Ky. Acts, Ch. 606.[7]

As to notification, between January 15, 1999, and April 11, 2000, KRS 17.572(1) provided in part as follows:

> The following individuals shall be notified by the sheriff of the county to which the offender is to be released:
>
> (a) The law enforcement agency having jurisdiction;
>
> (b) The law enforcement agency having had jurisdiction at the time of the offender's conviction;
>
> (c) Victims who have requested to be notified;
>
> (d) The Information Services Center, Kentucky State Police;
>
> (e) Any agency, organization, or group serving individuals who have similar characteristics to the previous victims of the offender, if the agency, organization, or group has filed a request for notification with the local sheriff; and
>
> (f) The general public through statewide media outlets and by any other means as technology becomes available.

In 2000, the General Assembly "extended the registration requirements to include an Internet Web site which posted the relevant information of the convicted sex offender including a photograph and address."[8] More specifically, KRS 17.580(1)[9] instructed the Kentucky State Police to establish a Web site displaying:

> (a) The registrant information, except for information that identifies a victim, fingerprints, and Social Security numbers, obtained by the Information Services Center, Kentucky State Police, under KRS 17.510; and
>
> (b) The sex offender information, except for information that identifies a victim, Social Security numbers, and vehicle registration data, obtained by the Information Services Center, Kentucky State Police, under KRS 17.510 prior to April 11, 2000.

■ The retroactive application of the 1998 and 2000 registration requirements was addressed by the Kentucky Supreme Court in *Hyatt v. Commonwealth.*[10] Hyatt, who had been sentenced in 1993 to several consecutive prison terms, was assessed in January 1999 as a high-risk sex offender pursuant to the 1998 registration scheme.[11] Hyatt challenged the court's retroactive application of the 1998 and 2000 statutes as violating his state and federal protections against ex post facto legislation.[12] The supreme court held that

---

7. *Martinez v. Commonwealth*, 72 S.W.3d 581, 583 (Ky.2002). *See* KRS 17.572, repealed effective April 11, 2000.

8. *Hyatt v. Commonwealth*, 72 S.W.3d 566, 570 (Ky.2002).

9. KRS 17.580(1) was effective April 11, 2000.

10. *Hyatt,* 72 S.W.3d at 571–574.

11. *Id.* at 570.

12. *Id.* at 571.

while the registration statute undoubtedly had been retroactively applied,[13] the laws

> do not punish sex offenders. They have a regulatory purpose only. The dissemination of information has never been considered a form of punishment. The Act in question does not impose any additional punishment on Hyatt, and are not ex post facto laws under either the United States Constitution or the Kentucky Constitution.[14]

The court also held that any privacy interests Hyatt had in the dissemination of his registration information were outweighed by the Commonwealth's interest in protecting its citizens.[15] Further, the court implicitly affirmed the application of the Internet publication statute to Hyatt.[16]

In the same opinion, the Kentucky Supreme Court considered the application of the 1998 version of KRS 17.500, *et seq.* to Nathaniel Sims after he was assessed as a high-risk sex offender pursuant to those statutes.[17] The court rejected Sims's argument that "the new punishment of Internet publicity under the 2000 amendments to the Sex Offender Registration Act [could not] be imposed on him and that this Court must order a removal of all information about him from the state police Web site."[18] Similarly, it cannot be said that the trial court erred by requiring Bray's registration information to be displayed on the Internet pursuant to KRS 17.580, as enacted in 2000.

Further, *Peterson v. Shake*[19] does not support Bray's argument. In that case, the Kentucky Supreme Court held that the Commonwealth could not prosecute Peterson for the Class D felony of violating the 2000 registration scheme, as opposed to the Class A misdemeanor of violating the 1998 registration scheme.[20] Unlike *Hyatt* and the matter now before us, *Peterson* did concern an ex post facto law, i.e., one that "relate[s] to a very real and direct effect on the actual time the prisoner remains behind bars which could include an increase in punishment."[21] Further, although the *Peterson* court did not reach the issue of whether KRS 17.580 applied to the defendant, it did note that the statute's application did not violate his "rights to due process under the federal or state constitution."[22] We conclude, therefore, that the trial court did not err by requiring publication of Bray's registration information on the Internet.

The Jefferson Circuit Court's order is affirmed.

ALL CONCUR.

---

13. *Id.*

14. *Id.* at 573.

15. *Id.* at 574.

16. *See id.* ("Public notification by means of the Internet has been determined not to violate the right of privacy in other jurisdictions. The Court of Appeals correctly found that neither the federal nor the state constitution prohibited the disclosure of such information when the public health or safety is involved." (internal citations omitted)).

17. *Id.* at 577–580.

18. *See id.* at 578.

19. 120 S.W.3d 707 (Ky.2003).

20. *Id.* at 708.

21. *See Hyatt,* 72 S.W.3d at 571.

22. *Peterson,* 120 S.W.3d at 710.