RENDERED: APRIL 22, 2010
TO BE PUBLISHED

𝕾𝖚𝖕𝖗𝖊𝖒𝖊 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕶𝖊𝖓𝖙𝖚𝖈𝖐𝖞 FINAL

2008-SC-000896-DG

DATE 5-13-10 £11A Groutt PC.

WILLIAM BUCK                                                          APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2007-CA-001481-MR
CAMPBELL CIRCUIT COURT NO. 07-CR-00102


COMMONWEALTH OF KENTUCKY                                      APPELLEE


**OPINION OF THE COURT BY JUSTICE SCHRODER**

**AFFIRMING**

In this case, we are called upon to evaluate this Court's holding in *Hyatt*

*v. Commonwealth*, 72 S.W.3d 566 (Ky. 2002), in light of 2006 amendments to

the Kentucky Sex Offender Registration Act (SORA). After considering the

arguments of the parties and the relevant case law, we continue to hold that

SORA does not violate the *Ex Post Facto* Clause of the United States

Constitution or the Kentucky Constitution.

**I. BACKGROUND**

In 1994, Kentucky first enacted SORA, also known as "Megan's Law."[1] It

required those convicted of sex offenses who were not incarcerated to register

---

[1] 1994 Ky. Acts ch. 392 (codified at KRS 17.500-17.540).

with their local probation and parole office, and to continue to register for a period of ten years after their final discharge from confinement, probation, parole, or any other form of supervised release. Failure to comply was a Class A misdemeanor. SORA also criminalized knowingly providing "false, misleading, or incomplete information" as a Class A misdemeanor. However, SORA's registration requirements applied only "to persons convicted after the effective date" of the Act. 1994 Ky. Acts ch. 392, § 6 (uncodified).

In 1998, the General Assembly amended SORA[2] to provide for risk assessments for sex offenders. Those designated high risk were required to register for life, while others were required to register for ten years after their final discharge. The provisions were made applicable to "persons individually sentenced or incarcerated after the effective date of this Act." 1998 Ky. Acts ch. 606, § 199 (uncodified). Some provisions became effective July 15, 1998, while the remainder went into effect January 15, 1999. *Id.* § 200.

Effective July 2000, the General Assembly again amended SORA,[3] eliminating the need for a risk assessment, and basing the length of registration on the offense committed. The amendments also increased the penalty for failing to register—and for providing false, misleading, or incomplete information—from a Class A misdemeanor to a Class D felony. The 2000 bill stated that it "shall apply to all persons who, after the effective date of this Act,

---

[2] 1998 Ky. Acts ch. 606, §§ 138-139.

[3] 2000 Ky. Acts ch. 401, §§ 15-17. The same bill also required the Kentucky State Police to create and maintain a website to display registrant information. *Id.* § 19.

2

are required . . . to become registrants . . . ." 2000 Ky. Acts ch. 401, § 37

(uncodified).[4]

The General Assembly approved another set of SORA amendments in

2006.[5] The 2006 amendments increased the registration period for non-

lifetime registrants from ten years to twenty years. The bill also amended the

statutes criminalizing failure to register or providing false, misleading, or

incomplete information:

> (11) Any person required to register under this section who knowingly violates any of the provisions of this section or prior law is guilty of a Class D felony for the first offense and a Class C felony for each subsequent offense.

> (12) Any person required to register under this section or prior law who knowingly provides false, misleading, or incomplete information is guilty of a Class D felony for the first offense and a Class C felony for each subsequent offense.

2006 Ky. Acts ch. 182, § 6 (codified at KRS 17.510(11) and (12)). The amended

statute enhanced the penalty for a second or subsequent offense to a Class C

felony, and criminalized the violation of "prior law." The same 2006 bill also

placed residency restrictions on all registrants.[6]

---

[4] 2000 Ky. Acts ch. 401, § 15 (codified at KRS 17.500) defines "registrant" as any person over eighteen, or any youthful offender, who has committed a sex crime or a criminal offense against a minor (as defined in the Act), or who is a sexually violent predator. The definition also includes a person required to register under the law of another state, or a person convicted of a crime in another state that would require registration had it been committed in Kentucky.

[5] 2006 Ky. Acts ch. 182, §§ 5-8.

[6] 2006 Ky. Acts ch. 182, § 3. This Court held in *Commonwealth v. Baker* that those residency restrictions could not be applied to those who committed their crimes before the effective date of the act. 295 S.W.3d 437 (Ky. 2009), *cert. denied*, ____ S. Ct. ____, No. 09-775, 2010 WL 757710 (U.S. Mar. 8, 2010).

In 1985, Appellant William Buck was convicted of first-degree sexual abuse. He received a probated three-year sentence. But in 1987, Buck was convicted of two additional, unrelated felonies (second-degree assault and second-degree burglary). He was sentenced to serve 23 years for all three convictions. In 1997, Buck was granted parole. Because the 1994 version of SORA applied only prospectively, Buck was not subject to SORA's registration requirements.

In February 2000, Buck violated the conditions of his parole, and was returned to prison. Because Buck then became a person incarcerated after the effective date of the 1998 amendments, those provisions applied to him, and he was required to register upon release. In addition, because Buck was still incarcerated when the 2000 amendments went into effect, he became subject to those provisions as well. In March 2001, Buck again received parole. In April 2002, Buck again violated the terms of his parole, and he returned to prison. In August 2005, Buck was once more granted parole.

On October 27, 2006 (after the effective date of SORA's 2006 amendments), the Newport, Kentucky police checked Buck's registered address, and found that he was not living there.[7] Buck was subsequently indicted for failure to register as a sexual offender (second or subsequent

---

[7] Buck had apparently registered as living at an abandoned building in Kenton County.

offense), a Class C felony as a result of the 2006 SORA amendments.[8]  Buck filed a motion to bar prosecution based on the *ex post facto* clauses of the United States and Kentucky constitutions.  The circuit court denied the motion.  As a result, Buck entered a conditional guilty plea to an amended charge of failure to register as a sexual offender (first offense), a Class D felony.  Buck reserved the right to appeal the circuit court's denial of his motion to bar prosecution based on the *ex post facto* clauses.  The Court of Appeals affirmed the ruling of the circuit court, and this Court then granted discretionary review.

## II. ANALYSIS

Both the United States Constitution and the Kentucky Constitution prohibit *ex post facto* laws.  U.S. Const. art. I, § 10; Ky. Const. § 19(1).  An *ex post facto* law is any law, which criminalizes an act that was innocent when done, aggravates or increases the punishment for a crime as compared to the punishment when the crime was committed, or alters the rules of evidence to require less or different proof in order to convict than what was necessary when the crime was committed.  *Purvis v. Commonwealth*, 14 S.W.3d 21, 23 (Ky. 2000) (citing *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798)).  The key inquiry is whether a retrospective law is punitive.  *Martin v. Chandler*, 122 S.W.3d 540, 547 (Ky. 2003) (citing *California Dept. of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995)).  *See also Commonwealth v. Baker*, 295 S.W.3d 437, 442

---

[8] The record is not entirely clear as to why Buck was initially charged with a second or subsequent offense.  However, it appears from the video record that Buck had been previously convicted for failure to register.

5

(Ky. 2009), *cert. denied*, ____ S. Ct. ____, No. 09-775, 2010 WL 757710 (U.S. Mar. 8, 2010).

To determine whether a retrospective law is punitive, "we must determine whether the legislature intended to establish a civil, nonpunitive, regulatory scheme, or whether the legislature intended to impose punishment." *Baker*, 295 S.W.3d at 442 (citing *Smith v. Doe*, 538 U.S. 84, 92 (2003)). If the legislature intended to impose punishment, then the law is punitive. *Id.* Where the "legislature intended to enact a civil, nonpunitive, regulatory scheme, then we must determine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Id.* (internal quotations and citations omitted).

In determining whether a civil, nonpunitive, regulatory scheme is punitive in either purpose or effect, this Court and the U.S. Supreme Court have applied five of the factors discussed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963). These factors are "whether, in its necessary operation, the regulatory scheme" (1) has been regarded in our history and traditions as punishment, (2) promotes the traditional aims of punishment, (3) imposes an affirmative disability or restraint, (4) has a rational connection to a nonpunitive purpose, or (5) is excessive with respect to the nonpunitive purpose. *Baker*, 295 S.W.3d at 443-44 (citing *Doe*, 538 U.S. at 97). These factors provide a "useful framework," but are "neither exhaustive nor dispositive." *Doe*, 538 U.S. at 97.

6

This Court, in *Hyatt v. Commonwealth*, addressed an *ex post facto* challenge to SORA and its 1998 and 2000 amendments.[9] 72 S.W.3d 566. The Court held that registration requirements do not amount to an *ex post facto* punishment, because Hyatt had been unable to show that he was disadvantaged by being required to register as a sex offender.[10] *Id.* at 571.

Though *Hyatt* rested its decision on whether registration requirements "disadvantage" the offender, the Court went on to discuss many of the *Mendoza-Martinez* factors. *Hyatt* noted that "the designation of sexual predator is not a sentence or a punishment but simply a status resulting from a conviction of a sex crime." *Id.* at 572. The Court also stated that registration does "not constitute a disability or restraint." *Id.*

> The Kentucky 1998 and 2000 Sex Offender Registration Statutes are directly related to the nonpunitive goals of protecting the safety of the public. The statutes in question do not amount to a separate punishment based on past crimes. . . . Any potential punishment arising from the violation of [SORA] is totally prospective and is not punishment for past criminal behavior.

*Id.*

---

[9] Though the appellants in *Hyatt* had been classified as high-risk sex offenders under the 1998 law, the *Hyatt* opinion also made reference to the 2000 amendments. *See Hyatt*, 72 S.W.3d at 572.

[10] *Hyatt* relied on the "disadvantage" language from *Weaver v. Graham*, 450 U.S. 24, 29 (1981). While *Baker* also made reference to this language, other cases have identified the "disadvantage" language as dicta. *See Morales*, 514 U.S. at 506 n.3; *Cecil v. Commonwealth*, 297 S.W.3d 12, 22-23 (Ky. 2009); *Martin*, 122 S.W.3d at 547. The key inquiry is clearly whether the law at issue is punitive. *Martin*, 122 S.W.3d at 547; *see also Baker*, 295 S.W.3d at 442.

The next year, the United States Supreme Court upheld the Alaska Sex Offender Registration Act against an *ex post facto* challenge. *Smith*, 538 U.S. 84. The Court concluded that the Alaska legislature did not intend the act to be punitive. *Id.* at 96. And, applying the *Mendoza-Martinez* factors, the Court held that the act was not so punitive in purpose or effect as to negate the legislature's intent to deem it civil. *Id.* at 105. Therefore, the registration act was not punitive, and retroactive application did not violate the *Ex Post Facto* Clause. *Id.* at 105-06.

Recently, this Court held in *Commonwealth v. Baker* that the retroactive application of the 2006 sex offender residency restrictions violated the *Ex Post Facto* Clause of the United States Constitution and the Kentucky Constitution. 295 S.W.3d at 447. Relying on *Hyatt* and the fact that the residency restrictions were an extension of SORA, this Court concluded that the General Assembly did not intend the residency restrictions to be punitive. *Id.* at 443. However, applying the *Mendoza-Martinez* factors, the majority concluded that Kentucky's residency restrictions were so punitive in effect as to negate any intention to deem them civil. *Id.* at 447. Therefore, the restrictions were punitive, and could not be applied retroactively. *Id.*

With these principles in mind, we now address the specifics of this case. Buck essentially makes two *ex post facto* arguments: (1) that the various enhancements to the degree of offense for failing to register constitute *ex post facto* punishment, and (2) that post-*Hyatt* amendments have changed SORA to such a degree that the entire sex offender registration scheme is now punitive,

8

and therefore subject to the *ex post facto* clauses.

The original, 1994 version of SORA did not apply to Buck, because it applied only to those convicted after the effective date of the act. 1994 Ky. Acts ch. 392, § 6 (uncodified). Therefore, when Buck was first paroled in 1997, he was not required to register. The 1998 version of SORA was made applicable to those sentenced *or incarcerated* for a sex crime after the effective date of the act. 1998 Ky. Acts ch. 606, § 199 (uncodified). As a result, Buck became subject to SORA when he returned to prison in February 2000.[11]

Effective July 2000, SORA was amended to increase the penalty for failure to register from a Class A misdemeanor to a Class D felony. 2000 Ky. Acts ch. 401, § 16(11) and (12) (codified at KRS 17.510(11) and (12)). The 2000 amendments applied to persons who "after the effective date of this Act, are required . . . to become registrants . . . ." *Id.* § 37 (uncodified). In addition, the 2000 version of SORA required registration upon "release by the court, the parole board, the cabinet, or any detention facility." *Id.* § 16(2) (codified at KRS 17.510(2)).

Because Buck was released after the 2000 amendments became effective, he was subject to the Class D felony penalty for failure to register. *See Peterson v. Shake*, 120 S.W.3d 707, 709-10 (Ky. 2003) (registrant released in 1999 not subject to 2000 version of SORA because 2000 version applies only to those who are required "to become registrants" after the effective date, but

---

[11] The issue of whether Buck was incarcerated for his sex crime or for his non-sexual felonies only is not before this Court, and there is no evidence in the record on this point.

9

2000 version applies to those who did not secure release prior to its effective date, distinguishing *Martinez v. Commonwealth*, 72 S.W.3d 581 (Ky. 2002)).[12]

Buck argues that the 2006 amendment to SORA, enhancing the penalty for a second or subsequent offense of failing to register, constitutes *ex post facto* punishment when applied to him. Although Buck ultimately pleaded guilty to an amended charge of a first offense (a Class D felony) we note that "the constitutional proscription against *ex post facto* laws does not extend to enhancing punishment for an offense committed *after* the effective date of a criminal statute by reason of status as a prior offender." *Botkin v. Commonwealth*, 890 S.W.2d 292, 293 (Ky. 1994) (citing *Gryger v. Burke*, 334 U.S. 728 (1948)) (emphasis original).

In addition, Buck argues that the 2000 amendment, which increased failure to register (first offense) from a Class A misdemeanor to a Class D felony, constitutes *ex post facto* punishment when applied to him. We cannot agree. "Any potential punishment arising from the violation of [SORA] is totally prospective and is not punishment for past criminal behavior." *Hyatt*, 72 S.W.3d at 572. *See also Doe*, 538 U.S. at 101-02 ("A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense."). While a sex offender's past conduct is the

---

[12] Unlike the appellant in *Peterson*, Buck was incarcerated when the 2000 amendments took effect, and he was not required to become a registrant until after that time. Therefore, the issue of what, if any, effect the 2006 amendments have on our holding in *Peterson* is not properly before this Court.

reason he or she is required to register, the failure to register occurs in the present. An increase in the degree of the offense for failing to register would only present an *ex post facto* issue if *the act of failing to register* occurred prior to the effective date of the amendment.

This also highlights an important difference between SORA and the sex offender residency restrictions at issue in *Baker*. In *Baker*, this Court concluded that KRS 17.545 (the sex offender residency restriction statute) was punitive in effect, taking into account the *Mendoza-Martinez* factors. 295 S.W.3d at 447. We stated that the statute could, among other things, force registrants to move from their homes, restrict registrants' access to social programs, and prevent registrants from making a permanent home. *Id.* at 445-47. These issues were particularly relevant to the conclusions that KRS 17.545 imposed an affirmative disability or restraint, and was excessive with respect to its nonpunitive purpose.

*Baker* dealt with the consequences of *compliance* with residency restrictions, and concluded that compliance was punitive in effect. By contrast, SORA requires an intervening, independent failure or omission (i.e., failure to register or providing false, misleading, or incomplete registration information) before it becomes punitive. When a statute is not expressly punitive, the relevant question for *ex post facto* purposes is what the statute *requires*—not the consequences of noncompliance.

Analyzing SORA and its 2006 amendments in light of what it requires from the registrant, we continue to believe that SORA is a remedial measure

with a rational connection to the nonpunitive goal of protection of public safety, and we see no reason to depart from our holding in *Hyatt*. Buck has demonstrated nothing in the 2006 amendments to SORA drastic enough to render SORA punitive.

Buck points to the fact that the 2006 bill amending SORA was entitled "AN ACT relating to sex offenses and the punishment thereof." In *Baker*, which dealt with another provision of the same 2006 bill, this Court rejected the argument that this title alone rendered the entire bill punitive. 295 S.W.3d at 443. Buck points to the increased length of registration (10 years increased to 20 years for non-lifetime registrants), but has not demonstrated that this increased registration period is being applied retroactively.

Buck also attempts to distinguish *Hyatt* and *Doe* based on the fact that the registrants in those cases were challenging the registration *system*, but had not yet been subject to *criminal liability*. This only underscores our holding in *Hyatt* that criminal liability for failure to register is prospective and not a punishment for past crimes. The fact that Buck, unlike the registrants in *Hyatt* and *Doe*, has actually been convicted of failing to register does not change the fact that that criminal prosecution is the result of a new crime, separate from the original sex offense. We find nothing in the 2006 amendments that requires us to depart from *Hyatt*.

### III. CONCLUSION

The enhancements to the degree of the offense of failing to register as a sex offender do not constitute *ex post facto* punishment as applied to Appellant

William Buck. In addition, the 2006 amendments to SORA have not changed the character of the statute to the point of rendering Kentucky's sex offender registration scheme punitive. Therefore, Buck's prosecution was not barred by the *Ex Post Facto* Clause of the United States Constitution or the Kentucky Constitution. The judgment of the Court of Appeals is hereby affirmed.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Samuel N. Potter
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

James Coleman Shackelford
Assistant Attorney General
Office of Criminal Appeals
1024 Capital Center Drive
Suite 200
Frankfort, KY 40601-8204