**Brian M. MOFFITT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2010–CA–001822–MR.**

Court of Appeals of Kentucky.

Feb. 3, 2012.

Bradley Fox, Covington, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Jason B. Moore, Assistant Attorney General, Frankfort, KY, for appellee.

Before ACREE and WINE,[1] Judges; LAMBERT,[2] Senior Judge.

## *OPINION*

ACREE, Judge:

The question presented in this appeal is whether Kentucky's Sex Offender Registration Act ("SORA" or the "Act"), codified at Kentucky Revised Statutes (KRS) 17.500—17.580, is unconstitutional as applied to Appellant, Brian Moffitt, on the grounds that it violates his procedural and substantive due process rights. Because we find Kentucky's SORA constitutionally sound, we affirm the Livingston Circuit Court's August 27, 2010 order denying Moffitt relief.

### I. *Facts and Procedure*

In June 2002, Moffitt was convicted of kidnapping a minor child in violation of KRS 509.040(b).[3] The specific instruction under which the jury found Moffitt guilty stated:

> You will find [Moffitt] guilty under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this County on or about July 15, 2001, and before the finding of the indictment herein, the Defendant, Brian Mason Moffitt, restrained [B.C.] by forcibly removing her from her home and taking her to and keeping her in Livingston County by force or intimidation;
>
> B. That the restraint was without [B.C.'s] consent;

1. Judge Thomas B. Wine concurred in this opinion prior to his retirement effective January 6, 2012. Release of the opinion was delayed by administrative handling.

2. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

3. The jury also found Moffitt not guilty of first-degree rape and first-degree sodomy.

AND

C. That in so restraining [B.C.] it was [Moffitt's] intention to accomplish or advance the commission of Rape, First Degree, and/or Sodomy, First Degree.

(Trial Record, p. 81). The jury recommended a fifteen-year prison sentence, and on August 7, 2002, the Livingston Circuit Court sentenced Moffitt consistent with the jury's recommendation. Moffitt appealed his conviction, which this Court ultimately affirmed.[4] *Moffitt v. Commonwealth*, 2004 WL 178568, at *1 (Ky.App. Jan. 30, 2004) (2004–CA–002143–MR), *disc. rev. denied* Dec. 8, 2004.

Following Moffitt's release from prison in March 2010, the local probation and parole office ordered him to register, for his lifetime, on the Kentucky State Police Sex Offender Registry pursuant to KRS 17.510 and 17.520(2)(a). Moffitt later filed a motion pursuant to Kentucky Rules of Civil Procedure (CR) 60.02[5] in the Livingston Circuit Court requesting removal from the Sex Offender Registry on the grounds that Kentucky's SORA, as applied to him, violated his procedural and substantive due process rights because he did not commit a sex crime. By order dated August 27, 2010, the circuit court denied Moffitt's motion. Moffitt promptly appealed.

## II. *Standard of Review*

■ Whether Kentucky's SORA is unconstitutional on due process grounds is a question of law. *Wilfong v. Commonwealth*, 175 S.W.3d 84, 91 (Ky.App.2004). Accordingly, we apply a *de novo* standard of review. *Id.; Hamilton–Smith v. Commonwealth*, 285 S.W.3d 307, 308 (Ky.App. 2009).

## III. *Kentucky's Sex Offender Registration Act*

The Kentucky General Assembly first adopted the SORA in April 1994. 1994 Ky. Acts ch. 392; *Hyatt v. Commonwealth*, 72 S.W.3d 566, 569 (Ky.2002). As in most states, the Act was known as this Commonwealth's "Megan's Law."[6] *Hyatt*, 72 S.W.3d at 569. The Act required that the names of persons convicted of sex crimes be placed on the Sex Offender Registry. *Commonwealth v. Nash*, 338 S.W.3d 264, 266–67 (Ky.2011); *Hyatt*, 72 S.W.3d at 569–70.

Shortly thereafter, on September 13, 1994, President Clinton signed into law the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act ("Jacob Wetterling Act"), 42 U.S.C. § 14071. The Jacob Wetterling Act required states to implement a sex offender and crimes against children registry. *Hyatt*, 72 S.W.3d at 569. To ensure compliance, Congress conditioned federal funding on states enacting the requisite registration statutes; states that failed to do so

---

4. On February 24, 2004, Moffitt also filed a *pro se* motion seeking to expunge all records pertaining to the rape and sodomy charges. The Livingston Circuit Court denied Moffitt's motion and on April 22, 2005, this Court affirmed the trial court's decision. *Moffitt v. Commonwealth*, 2005 WL 928403, at *1 (Ky. App. Apr. 22, 2005) (2004–CA–000825–MR).

5. While Moffitt did not designate under which civil or criminal rule he was seeking relief, the Livingston Circuit Court treated Moffitt's motion as brought pursuant to CR 60.02.

6. "Megan Kanka was a 7–year–old New Jersey girl who was sexually assaulted and murdered in 1994 by a neighbor who, unknown to the victim's family, had prior convictions for sex offenses against children. The crime gave impetus to laws for mandatory registration of sex offenders and corresponding community notification." *Smith v. Doe*, 538 U.S. 84, 89, 123 S.Ct. 1140, 1145, 155 L.Ed.2d 164 (2003).

would forfeit ten percent of the funds they would customarily receive under 42 U.S.C. § 3765, the Omnibus Crime Control and Safe Streets Act of 1968. *Id.* In 1996, Congress amended the Jacob Wetterling Act to also require states to establish a community notification system which made registry information available to the public. *See People v. Johnson,* 225 Ill.2d 573, 312 Ill.Dec. 350, 870 N.E.2d 415, 424 (2007); *People v. Cintron,* 13 Misc.3d 833, 827 N.Y.S.2d 445, 448 n. 6 (N.Y.2006).

In 2000,[7] the Kentucky General Assembly amended its SORA to ensure compliance with the Jacob Wetterling Act.[8] Specifically, the General Assembly required registration by any person convicted of a sex crime or an enumerated offense against a minor provided the offender was eighteen years old or older at the time he committed the offense. KRS 17.510(6), 17.500(5)(a);[9] *see also Hamilton–Smith v. Commonwealth,* 285 S.W.3d 307 at 309 (emphasizing "[a]ny person who has been convicted of a 'criminal offense against a victim who is a minor' [as defined in KRS 17.500(5) ] is required to register"). The Act defined a "criminal offense against a minor" to include kidnapping in violation of KRS 509.040, the statute of which Moffitt was convicted in 2002. KRS 17.500(3)(a); *see also Ladriere v. Commonwealth,* 329 S.W.3d 278, 281 (Ky.2010) (reiterating "kidnapping under KRS 509.040 is explicitly included in the definition of a 'criminal offense against a victim who is a minor,' if the victim is under the age of eighteen" (citation omitted)). The Act also mandated lifetime registration of persons convicted of kidnapping in violation of KRS 509.040. KRS 17.520(2)(a); *Ladriere,* 329 S.W.3d at 281 (explaining lifetime registration due to criminal conviction for kidnapping a minor).

The Kentucky Legislature again amended the Act in 2006, 2007, 2008, 2009, and 2011. *See Nash,* 338 S.W.3d at 267–68 (describing the 2006, 2007, and 2008 amendments); 2009 Ky. Acts ch. 105, §§ 5, 6, 7; 2009 Ky. Acts ch. 100, §§ 6, 7, 8; 2011 Ky. Acts ch. 2, §§ 92, 93. However, the pertinent sections set forth above have not been discarded or displaced, and remain applicable today.

## IV. *Analysis*

Moffitt concedes the crime for which he was convicted was against a minor. Mof-

---

7. The General Assembly also modified the SORA in 1998 to provide for risk assessments for sex offenders. *Hyatt,* 72 S.W.3d at 570. Persons classified as "high risk" were required to register for their lifetime, while all others were required to register for a period of ten years following their final discharge. *Cox v. Commonwealth of Kentucky,* No. 1:10CV–93–M, slip op. at 4 n. 7, 2010 WL 3909236 (W.D.Ky. Sept. 30, 2010). The 2000 amendment to the SORA eliminated "the need for a risk assessment, instead making the length of registration dependent on the nature of the underlying offense." *Id.,* slip op. at 2; *see also Nash,* 338 S.W.3d at 267.

8. The 2000 amendments included a provision that "[w]hereas the federal government has mandated that the Commonwealth immediately enact public safety legislation contained in Sections 15 to 38 of this Act or lose federal funding, an emergency is declared to exist, and Sections 15 to 38 of this Act take effect upon this Act's passage and approval by the Governor or upon this Act otherwise becoming law." 2000 Ky. Acts. ch. 401, § 40.

9. When enacted in 2000, KRS 17.500(4) defined the term "registrant." However, the 2006 amendments to the Act moved the definition to KRS 17.500(5), but did not alter the term's definition. Currently, KRS 17.500(5) defines the term "registrant" as follows:

(a) Any person eighteen (18) years of age or older at the time of the offense ... who has committed:
  1. A sex crime; or
  2. A criminal offense against a victim who is a minor; or,
(b) Any person required to register under KRS 17.510; or
(c) Any sexually violent predator.

fitt also acknowledges Kentucky's General Assembly has ordered that persons convicted of a crime in which the victim was a minor, including kidnapping, are required to register for their lifetimes. KRS 17.510(6), 17.520(2)(a). Yet, Moffitt contends Kentucky's SORA, as applied to him,[10] violates the Due Process Clause of the 14th Amendment of the U.S. Constitution because kidnapping is not a sex crime, nor does it contain a sexual element.[11]

### A. Procedural Due Process Claim

■ First, Moffitt asserts he was deprived of his procedural due process rights when he was not provided an opportunity to dispute his placement on the Kentucky State Police Sex Offender Registry. In essence, Moffitt contends Kentucky's SORA violates procedural due process, as applied to him, because the requirement to register is automatic and the Act fails to provide a meaningful opportunity for him to challenge that requirement. Moffitt's argument lacks merit.

The Fourteenth Amendment to the United States Constitution ensures that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1; *accord* amend. V. This Clause restrains the government from depriving a person of his life, liberty, or property rights without first providing him with notice and an opportunity to be heard. *See, e.g., Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *Miller v. Johnson Controls, Inc.,* 296 S.W.3d 392, 397 (Ky.2009).

Unfortunately for Moffitt, "[p]rocedural due process challenges to state sex-offender registry statutes that mandate the registration of all convicted sex offenders have been foreclosed by the Supreme Court's decision in [*Connecticut Department of Public Safety v. Doe,* 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003) ]." *Doe v. Michigan Dept. of State Police,* 490 F.3d 491, 502 (6th Cir.2007).

In *Connecticut Department of Public Safety v. Doe,* the Supreme Court addressed whether procedural due process entitled sex offenders to a pre-deprivation hearing prior to being listed on Connecticut's sex-offender registry. 538 U.S. at 4, 123 S.Ct. at 1162–63. Under Connecticut's statutory scheme, "individuals included within the registry are included *solely* by virtue of their conviction record and state law." *Id.* at 7, 123 S.Ct. at 1164. Because the registration requirement arose automatically based only on the offender's conviction for a particular crime, the Court reasoned that, under the Connecticut statute, due process did not entitle sex offenders to a pre-deprivation hearing. *Id.* The Court further explained that, under similar statutory schemes, challenges based on one's inclusion on registries " 'must ultimately be analyzed' in terms of substantive, not procedural, due process." *Id.* at 8, 123 S.Ct. at 1165 (citing *Michael H. v. Gerald D.,* 491 U.S. 110, 121, 109 S.Ct. 2333, 2341, 105 L.Ed.2d 91 (1989)).

Similar to the Connecticut statute, Kentucky's SORA requires the registration of all offenders convicted of a crime in which the victim was a minor, as defined in KRS

---

**10.** At times, Moffitt appears to conflate his "as-applied" challenge with a "facial" challenge.

**11.** In his brief to this Court, Moffitt also contends the circuit court erred when it determined Moffitt failed to file his CR 60.02 motion within a reasonable time. *See* Cr 60.02

("The motion shall be made within a reasonable time...."). While the circuit court questioned the timeliness of Moffitt's motion, it did not ultimately enter a ruling declaring Moffitt's motion untimely. Accordingly, we will not address Moffitt's claim of error.

17.500(3). Likewise, the registration requirement turns solely on the offender's conviction alone—"a fact that [the] convicted offender has already had a procedurally safeguarded opportunity to contest." *Connecticut Dept. of Public Safety*, 538 U.S. at 7, 123 S.Ct. at 1164. Therefore, in Kentucky, all qualifying offenders convicted or sentenced after a certain date are listed on Kentucky's Sex Offender Registry without exception.

■ Here, Moffitt concedes that he was convicted of kidnapping, a crime that requires registration on Kentucky's Sex Offender Registry. Further, Moffitt received a full and procedurally safeguarded trial, and had an opportunity at that trial to challenge whether he committed the kidnapping crime. Accordingly, Moffitt received a meaningful opportunity to be heard during his trial and, despite his argument to the contrary, no additional process is due. *See Connecticut Department of Public Safety*, 538 U.S. at 7–8, 123 S.Ct. at 1164–65; *see also Commonwealth Natural Resources and Environmental Protection Cabinet v. Kentec Coal Co., Inc.*, 177 S.W.3d 718, 734 (Ky.2005) ("[W]hen this Court analyzes state legislation under the federal Due Process and Equal Protection Clauses, it is bound by the decisions of the United States Supreme Court.").

As noted by the Supreme Court in *Connecticut Department of Public Safety*, substantive, not procedural, due process governs Moffitt's claim. 538 U.S. at 8, 123 S.Ct. at 1165. We therefore turn to his substantive due process claim.

### B. Substantive Due Process Claim

■ Moffitt contends Kentucky's SORA is unconstitutionally over-inclusive because it requires him to register on the Kentucky State Police Sex Offender Registry,

even though his underlying kidnapping offense is not a sex crime, nor does it require or involve a sexual act or component. As a result, Moffitt argues, the Act violates his substantive due process rights. We disagree.

Substantive due process prohibits certain "governmental deprivations of life, liberty, or property" irrespective of their procedural fairness. *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir.2007). It functions to shield citizens from unrestrained and arbitrary government acts which lack a "reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043 (1998); *see also Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir.1988) ("Substantive due process, a much more ephemeral concept [than procedural due process], protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action."); *Miller*, 296 S.W.3d at 397 (noting "substantive due process ... is based on the idea that some rights are so fundamental that the government must have an exceedingly important reason to regulate them, if at all....").

In examining a substantive due process claim, we must first determine what level of scrutiny applies. "Currently, there are three levels of review[:] rational basis, strict scrutiny, and the seldom used intermediate scrutiny, which falls somewhere between the other two." *Natural Res. and Env't Prot. Cabinet v. Kentec Coal Co., Inc.*, 177 S.W.3d 718 at 725. We apply strict scrutiny "when a statute significantly interferes with the exercise of a fundamental right [12]." *D.F. v. Codell*, 127

12. Fundamental rights include "the rights to    marry, to have children, to direct the edu-

S.W.3d 571, 575 (Ky.2003); *Zablocki v. Redhail*, 434 U.S. 374, 387, 98 S.Ct. 673, 681, 54 L.Ed.2d 618 (1978). When a fundamental right is not at issue, the less-strict rational-basis standard applies. *See Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996); *Michigan Dept. of State Police*, 490 F.3d at 501 ("We evaluate statutes that do not implicate a [person's] fundamental rights by utilizing a rational-basis standard of review.").

■ Here, Moffitt acknowledges, and we agree, that no fundamental right is at issue. Accordingly, we apply the rational-basis test to determine whether Kentucky's SORA violates Moffitt's substantive due process rights. *See Michigan Dept. of State Police*, 490 F.3d at 501; *State v. Smith*, 323 Wis.2d 377, 780 N.W.2d 90, 96 (2010); *State v. Robinson*, 873 So.2d 1205, 1217 (Fla.2004).

Under the rational-basis standard, a statute passes constitutional muster if it is "rationally related to a legitimate state" purpose. *Stephens v. State Farm Mutual Auto. Ins. Co.*, 894 S.W.2d 624, 627 (Ky. 1995); *Edwards v. Louisville Ladder*, 957 S.W.2d 290, 295–96 (Ky.App.1997) (substantive due process is violated under the rational-basis test if the "deprivation[ ] of liberty rest[s] on grounds wholly irrelevant to a reasonable state objective"). Stated more simply, the rational-basis test requires a "reasonable fit" between the state's purpose and "the means chosen to advance that purpose." *Reno v. Flores*, 507 U.S. 292, 305, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993). It is important to emphasize that, in applying the rational-basis test, we must presume Kentucky's SORA is constitutional; in other words, "an act should be held valid unless it clearly offends the limitations and prohibitions of the Constitution." *Stephens*, 894 S.W.2d at 626; *Brooks v. Island Creek Coal Co.*, 678 S.W.2d 791, 792 (Ky.App.1984).

Moffitt argues that, in the absence of any sexual motivation, or a crime in which sexual conduct is an element of the offense, labeling him a "sexual offender" and subjecting him to registration requirements is not rationally related to a legitimate state objective or purpose, as applied to him. Moffitt further contends Kentucky's SORA was intended to address sex crimes and offenses containing a sexual element, not child abductions. We disagree.

The parties did not cite, nor did our research reveal, Kentucky caselaw that directly addresses the issue before us. However, the Western District of Kentucky recently examined this precise issue in *Cox v. Commonwealth of Kentucky*, No. 1:10CV–93–M, slip op., 2010 WL 3909236 (W.D.Ky. Sept. 30, 2010).[13] In that case, Cox was convicted of kidnapping a minor child in violation of KRS 509.040. *Cox*, slip op. at 1. Cox argued—and the Commonwealth agreed—that she did not com-

---

cation and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 2267, 138 L.Ed.2d 772 (1997) (citations omitted).

**13.** *Cox v. Commonwealth of Kentucky* was rendered September 30, 2010, and designated as a "slip opinion." However, in accordance with Federal Rules of Appellate Procedure (FRAP) 32.1, "[a] court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished' ... and (ii) issued after January 1, 1997." While Kentucky courts are not bound by FRAP 32.1, the federal judiciary has determined that all of its opinions rendered after January 1, 1997, have equally persuasive import without regard to their designation as unpublished. We should take no less a view of those opinions.

mit a sexual offense. *Id.* Upon her release from prison, in accordance with Kentucky's SORA, Cox was ordered to register on Kentucky's Sex Offender Registry. *Id.,* slip op. at 2. In response, Cox filed suit against the Commonwealth claiming Kentucky's SORA violated, *inter alia,* her substantive due process rights because she was never charged with nor convicted of a sexually based offense. *Id.* The district court disagreed, concluding the "inclusion of kidnapping even where not sexually motivated is rationally related to the Kentucky General Assembly's stated purpose of protecting minors from crime and potential sexual assault." *Id.,* slip op. at 6. In reaching its conclusion, the district court first examined the title of KRS 17.510, the statute at issue: "Registration system for adults who have committed sex crimes or crimes against minors—Persons required to register—Manner of registration—Penalties—Notifications of violations required." *Id.,* slip op. at 5. The district court explained that the "title clearly indicates the statute is aimed at both sex crimes *and* crimes against minors. This provides support that the General Assembly's purpose for including kidnapping a minor in the list of offenses requiring registration was aimed at protecting children from crime in general, not just sexually related crime." *Id.*

Next, because Kentucky adopted its SORA as a result of the Jacob Wetterling Act, the district court examined the Jacob Wetterling Act's legislative history to ascertain Congress' purpose and objective in enacting the statute. *Id.* The district court determined:

> 1) the statute was aimed at protecting children from abduction as well as sexually related crimes; and 2) *Congress considered it important that the majority of kidnapping victims are also sexually assaulted.* See Jacob Wetterling Crimes Against Children Registra-

tion Act, Committee on the Judiciary, H.R.REP. NO. 103–392 (1993) (*"Each year, the Department of Justice estimates there are approximately 114,000 non-family attempted child abductions ... Two-thirds of the cases of non-family child abduction reported to police involve sexual assault ... The Committee believes that protection of children from violence and sex offenses falls clearly within the Federal government's purview in protecting the health, safety and welfare of its citizens."*); Jacob Wetterling Crimes Against Children Registration Act, 139 CON. REC. H. 10319 (1993) (statement of Rep. Sensenbrenner) (*"The reason this bill is so important is because of the high rate of recidivism in persons who have committed crimes against children, and it is not just sex crimes against children but all crimes against children. The recidivism rate is probably higher in this area of our criminal justice system or in violations of the criminal code."*); Personal Remarks, 140 CON. REC. H. 8968 (1994) (statement of Rep. Ramstad) ("We also need the Jacob Wetterling Child Protection bill, which I wrote. The children of America and their families need the Wetterling bill to protect them from child abductors and molesters, and cops want it as a resource for investigating child abduction and molestation cases.").

*Id.* (emphasis supplied). The district court reasoned "[i]f Congress had a reasonable basis for requiring child abductors to register, it necessarily follows that legislation intended to bring [Kentucky] into compliance with the Jacob Wetterling Act shares that basis." *Id.,* slip op. at 6. As a result, the district court determined Kentucky's legislature had a legitimate interest in protecting children from potential

256 ■

sexual assaults and other crimes, and a registration system requiring those convicted of certain crimes against minors furthered that interest. *Id.* Therefore, the district court concluded, Kentucky's SORA did not violate Cox's substantive due process rights by requiring her to register by virtue of her kidnapping conviction. *Id.*

As noted by the district court, "[t]his issue has been considered by a number of state courts with differing outcomes." [14] *Cox,* slip op. at 4. We have considered those differing outcomes and remain convinced that the district court's analysis in *Cox* is well reasoned and persuasive. Therefore, we adopt that analysis and apply it here, for it is consistent with prior holdings of our Supreme Court and with enactments of the Kentucky Legislature.

■ The Kentucky Supreme Court has recognized on several occasions that the state's interest in public safety underlies the SORA. *Hyatt,* 72 S.W.3d at 580; *Commonwealth v. Baker,* 295 S.W.3d 437,

443 (Ky.2009); *Buck v. Commonwealth,* 308 S.W.3d 661, 667 (Ky.2010). Additionally, as the district court set forth in *Cox,* the history behind the creation of the Jacob Wetterling Act evinces that Congress, and in turn the Kentucky legislature, was cognizant of the connection between child abduction and sexual abuse. *Cox,* slip op. at 5. Therefore, we find the protection of children and the public is a legitimate state interest, and a registration system for child kidnappers and abductors rationally furthers that interest.

■ Notably, as applied to Moffitt, we find the Commonwealth's purpose of protecting children from becoming victims of sex crimes is rationally related to the requirement imposed by law classifying Moffitt as a "registrant" and requiring that he register on Kentucky's Sex Offender Registry because his particular crime *did* include a sexual component. As noted, the jury instructions authorized the jury to find Moffitt guilty of kidnapping if, among other things, it determined that "in so

---

**14.** *"Compare State v. Smith,* 323 Wis.2d 377, 780 N.W.2d 90 (2010) ("We have outlined numerous conceivable, rational reasons why the legislature could have so chosen to include registration for Smith, who was convicted of false imprisonment of a minor, regardless of whether his crime was of a sexual nature. Smith fails to establish that any of these conceivable policy decisions are arbitrarily or irrationally applied to him."); *People v. Johnson,* 225 Ill.2d 573, 312 Ill.Dec. 350, 870 N.E.2d 415 (Ill.2007) (holding that legislature's inclusion of kidnapping of a minor, regardless of whether the conduct was sexually related, in Illinois sex offender registration statute was a reasonable one, and therefore, the act was not unconstitutional as applied to a defendant convicted of a kidnapping); *Marlett v. State,* 878 N.E.2d 860, 870 (Ind.Ct.App.2007); *People v. Cintron,* 13 Misc.3d 833, 827 N.Y.S.2d 445, 460 (N.Y.Sup. Ct.2006) ("Treating kidnapping and unlawful imprisonment of a minor as sex offenses subject to registration and notification is rationally related to the legitimate governmental ob-

jectives underlying the adoption of JWA and SORA."); and *State v. Sakobie,* 165 N.C.App. 447, 452, 598 S.E.2d 615 (N.C.Ct.App.2004), *with ACLU of N.M. v. City of Albuquerque,* 139 N.M. 761, 772, 137 P.3d 1215 (N.M.Ct.App. 2006) ("The registration requirements for the offenses of kidnapping and false imprisonment, without any indication of sexual motive, violate substantive due process."); *State v. Robinson,* 873 So.2d 1205, 1217 (Fla.2004) ("Where the State concedes that the crime contained no sexual element and the circumstances of the crime conclusively belie any sexual motive, the designation of the defendant as a sexual predator-which then invokes the attendant statutory requirements and prohibitions-based solely on his conviction for kidnapping a minor not his child violates the defendant's right to due process of law."); and *State v. Young,* 2003 WL 2004025, 2003 Ohio App. LEXIS 2056 (Ohio Ct.App. May 2, 2003) (same)." *Cox v. Commonwealth of Kentucky,* No. 1:10CV–93–M, slip op. at 4 n. 7, 2010 WL 3909236 (W.D.Ky. Sept. 30, 2010).

restraining [B.C.] it was [Moffitt's] intention to accomplish or advance the commission of Rape, First Degree, and/or Sodomy, First Degree." (Trial Record, p. 81). The guilty verdict in this case necessarily required the jury to find beyond reasonable doubt that he intended to commit a sex crime against B.C. Therefore, despite his argument to the contrary, Moffitt's conviction did, in fact, contain a sexual element or component. Under these circumstances, we are unable to conclude Kentucky's SORA is unconstitutional as applied to Moffitt.

■ Further, despite Moffitt's contrary argument, Kentucky's SORA does not label those convicted of a crime against a minor "sexual offenders." When the General Assembly amended the Act in 2000, it specifically chose to label such persons "registrants," as set forth in KRS 17.500(5). In that same statute, the Kentucky legislature defines a "sexual offender" as a "person convicted of, pleading guilty to, or entering an Alford plea to a sex crime as defined in this section,[15] as of the date the verdict is entered by the court[.]" KRS 17.500(9). Thus, a "registrant" who is convicted of an offense against a minor is distinguishable from a "sex offender" who committed a sex crime. Moreover, "even though the registry itself is often denoted by the Commonwealth as the 'sex offender registry,' the information available to the public correctly lists the exact crime [Moffitt] was found guilty of committing, kidnapping. It does not state [he] was convicted of a sexually based crime." *Cox*, slip op. at 5 n. 10.

In *Ladriere v. Commonwealth*, 329 S.W.3d 278, the Kentucky Supreme Court rejected, *albeit* not on substantive due process grounds, an argument similar to that propounded by Moffitt. In *Ladriere*, the defendant pleaded guilty to kidnapping a minor under KRS 509.040. As a result of his conviction, the defendant was required to submit to lifetime registration on Kentucky's Sex Offender Registry. The defendant challenged the registration requirement, arguing he was unfairly prejudiced by having to register as a sexual offender as opposed to a mere registrant. Additionally, the defendant asserted that "to the extent the Department of Corrections forces all registrants to be called sex offenders," it is improperly conveying his legal status because he was convicted of a crime against a minor, not a sex crime. *Id.* at 281. Our Supreme Court rejected the defendant's arguments as "baseless[,]" finding "the Justice and Public Safety Cabinet is charged with the development and implementation of the registration system, KRS 17.510, and the General Assembly has legislated the inclusion of offenders such as [the defendant] who commit" a criminal offense against a minor. *Id.* at 281–82.

■ Finally, Moffitt contends Kentucky's SORA, and specifically KRS 17.510, is unconstitutionally vague as applied to him because those persons convicted of a crime against a minor, regardless of the particular offense, are subject to the Act's registration requirements. Moffitt asserts the phrase "crimes against minors" is vague and, as a result, KRS 17.510 is unconstitutional. Moffitt's argument lacks merit.

■ "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly de-

---

**15.** The Act defines a "sex crime" as a "felony offense defined in KRS Chapter 510, or KRS 530.020, 530.064(1)(a), 531.310, or 531.320; a felony attempt to commit a felony offense specified in paragraph (a) of this subsection;" or a similar offense in another jurisdiction. KRS 17.500(8).

fined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). A statute is "vague" if "men of common intelligence must necessarily guess at its meaning." *State Bd. for Elementary and Secondary Educ. v. Howard,* 834 S.W.2d 657, 662 (Ky.1992) (citing *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). Stated differently, a statute is impermissibly vague if those persons affected by it are unable to reasonably understand what the statute requires. *Gurnee v. Lexington–Fayette Urban County Government,* 6 S.W.3d 852, 856 (Ky.App.1999).

"To satisfy the void for vagueness doctrine a statute must: 1) provide fair notice to those targeted by the statute, 'by containing sufficient definiteness so that ordinary people can understand what conduct is prohibited' and 2) it must have been drafted in such a way to discourage arbitrary and discriminatory enforcement." *Tobar v. Commonwealth,* 284 S.W.3d 133, 135 (Ky.2009) (citing *Wilfong v. Commonwealth,* 175 S.W.3d 84, 95 (Ky.App.2004)); *Lexington Fayette County Food and Beverage Ass'n v. Lexington–Fayette Urban County Government,* 131 S.W.3d 745, 756 (Ky.2004).

In the case *sub judice,* Moffitt takes issue with the phrase "crimes against minors" as set forth in KRS 17.510(6), claiming the subsection simply refers to those convicted of crimes against minors without specifying anything further. As a result, Moffitt argues, "[if] KRS 17.510 is enforced by the strict letter of the law as created by the Legislature, any person convicted of child abuse, domestic violence, assault, theft, or even fraud, where the victim was a minor, would be required to register on the Kentucky State Police Sex Offender Registry." (Appellant's Br. 7–8). Moffitt fails, however, to read Kentucky's SORA in its entirety.

As Moffitt correctly points out, KRS 17.510(6) provides:

> Any person who has been convicted in a court of any state or territory ... of a sex crime or *criminal offense against a victim who is a minor* and who has been notified of the duty to register by that state, territory, or court ... shall comply with the registration requirement of this section[.]

KRS 17.510(6) (emphasis supplied). In order to determine what constitutes a criminal offense against a minor, we turn to KRS 17.500(3)(a), entitled "Definitions for KRS 17.500 to 17.580," which defines a "criminal offense against a victim who is a minor" as:

1. Kidnapping, as set forth in KRS 509.040, except by a parent;
2. Unlawful imprisonment, as set forth in KRS 509.020, except by a parent;
3. Sex crime;
4. Promoting a sexual performance of a minor, as set forth in KRS 531.320;
5. Human trafficking involving commercial sexual activity, as set forth in KRS 529.100;
6. Promoting prostitution, as set forth in KRS 529.040, when the defendant advances or profits from the prostitution of a person under the age of eighteen (18);
7. Use of a minor in a sexual performance, as set forth in KRS 531.310;
8. Sexual abuse, as set forth in KRS 510.120 and 510.130;
9. Unlawful transaction with a minor in the first degree, as set forth in KRS 530.064(1)(a);
10. Any offense involving a minor or depictions of a minor, as set forth in KRS Chapter 531;
11. Any attempt to commit any of the offenses described in subparagraphs 1. to 10. of this paragraph; and
12. Solicitation to commit any of the offenses described in subparagraphs 1. to 10. of this paragraph.

KRS 17.500(3)(a). Collectively, KRS 17.510(6) and 17.500(3)(a) clearly set forth the precise crimes against minors which will subject an offender to the SORA, including the registration requirements. Accordingly, the SORA provides fair notice to those who may be subject to the Act, and is drafted in such a manner as to avoid arbitrary and discriminatory enforcement. *Tobar*, 284 S.W.3d at 135. Accordingly, Moffitt's argument that KRS 17.510 is unconstitutionally vague for failing to define the phrase "crimes against minors" is without merit.

## V. *Conclusion*

Kentucky's SORA does not violate Moffitt's procedural or substantive due process rights by requiring him to register, for his lifetime, on Kentucky's Sex Offender Registry as a result of his conviction for kidnapping a minor under KRS 509.040. Accordingly, the Act is not unconstitutional as applied to Moffitt. The Livingston Circuit Court's August 27, 2010 order is affirmed.

ALL CONCUR.